[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 367.]

THE STATE EX REL. YANCEY, APPELLANT, v. FIRESTONE TIRE & RUBBER COMPANY ET AL., APPELLEES.

[Cite as *State ex rel. Yancey v. Firestone Tire & Rubber Co.*, 1997-Ohio-44.]

*Workers' compensation—Mandamus available to compel payments, pursuant to R.C. 4123.60, to a decedent's spouse for permanent total disability compensation the decedent might have received prior to his death—Industrial Commission abuses its discretion in finding claimant is not permanently and totally disabled when no evidence in the record supports the commission's decision.*

(No. 94-2617—Submitted November 12, 1996—Decided January 22, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD08-1152.

————————————

{¶ 1} Appellant, Leola Yancey, seeks a writ of mandamus (1) to vacate appellee Industrial Commission of Ohio's denial of her deceased husband's application for permanent total disability compensation ("PTD"), and (2) to award her, pursuant to R.C. 4123.60, the PTD she claims he should have received prior to his death.

{¶ 2} Leola's husband, Charles Yancey, was injured in 1973 while working for appellee Firestone Tire & Rubber Company ("Firestone"). His workers' compensation claim was recognized for "contusion to head, cervical strain, cervical radiculitis, post traumatic headaches, post traumatic stress disorder and aggravation of pre-existing anxiety neurosis [or disorder]." After his injury, Charles was diagnosed with an unrelated diabetic condition that eventually resulted in pedal amputations and total blindness. In 1985, Charles applied for PTD based on the report of his psychiatrist, Dr. Maximilien Menassa, who opined that Charles was permanently and totally disabled.

**{¶ 3}** David E. Aronson, Ph.D., a clinical psychologist and commission specialist, assessed a thirty percent psychological impairment and also predicted that Charles would never be able to return to work.

**{¶ 4}** Dr. John Frenz, another commission specialist, expressly recognized that he was to evaluate whether Charles was "permanently and totally disabled from sustained remunerative employment due to the allowed conditions" and, "[i]f not, [to] so state, and [to] give [a] definite percentage of impairment." Dr. Frenz noted that Charles was blind and had had some pedal amputations due to diabetes unrelated to his industrial injury; however, he still concluded:

"This claimant has indeed sustained impairments per this claim which rende[r] him permanently and totally disabled from sustained remunerative employment to a degree of 100%; this is exclusive of his other unrelated medical problems and disabilities."

**{¶ 5}** Dr. Robert Rosen, an osteopath for the commission, reviewed the Menassa, Frenz and Aronson reports and concluded:

"It is doubtful that a 66 year old blind man could be rehabilitated into any type of gainful employment. For this reason, it is my opinion he is Permanently and Totally Disabled from any form of remunerative employment do [*sic,* due] to the allowed conditions in the above mentioned claims."

**{¶ 6}** Charles died on November 28, 1988, before the commission's disposition of his PTD application. In January 1989, Leola applied, as Charles' dependent, for the accrued compensation he might have received before his death. The commission denied Leola's application in May 1993, finding that Charles was not permanently and totally disabled, that he was capable of sedentary work, and that his prior work history and educational level did not preclude this employment. The commission explained:

"The reports of Drs. Menassa, Aronson, Frenz and Rosen were reviewed and evaluated.  This order is based particularly upon the reports of Drs. Rosen, Frenz and Aronson, the evidence in the file and the evidence adduced at the hearing.

"* * *

"A review of the medical evidence on file relative to the claimant's medical impairment relating to the allowed conditions in the claim leaves [*sic,* leads] the Commission to conclude that the totality of the medical evidence on file reflects that the claimant is not permanently and totally impaired.  In this regard, the Commission specifically notes that the determination of disability is within the discretion of the Commission and that the opinions of the examining physicians should be restricted to a question of impairment based upon acceptable reference criteria.  Dr. Aronson found the claimant's psychological presentation to represent only a 30% total body impairment while Dr. Rosen and Dr. Franz [*sic*] found the claimant to be totally disabled.  However, neither of these two reports indicated what level of impairment resulted from the allowed conditions in the claim.  Accordingly, a review of the file with particular attention to the medical treatment on file, leaves [*sic*] the Commission to conclude that the claimant's medical presentation from the allowed conditions does not render him permanently and totally impaired.  The Commission finds that the claimant retained the residual functional capacity to perform sedentary levels of employment had he not expired in November of 1988.  It is further noted that the claimant was able to complete 10 formal years of education and that he had a work history as a janitor, a treadroom worker, a foundry worker and a general laborer.  The Commission finds that his vocational presentation would have been consistent with allowing him to [join] the active work force in positions for which he was medically capable of performing.  However, the Commission notes that the claimant had [an] unrelated and unallowed diabetes mellitus condition.  The effect this non-related medical presentation had on the claimant's ability to perform sustained remunerative employment leads the

Commission to conclude that the claimant's inability to return to the active work force prior to his death was not causally related to the allowed conditions in the claim. Accordingly, the instant application for permanent total disability was [*sic*] well as the widow claimant's application for accrued benefits for permanent total disability are denied consistent with this order."

{¶ 7} Leola then filed her mandamus complaint in the Court of Appeals for Franklin County. She argued that the commission had abused its discretion in finding Charles fit for sustained remunerative employment and in denying her application for the PTD he should have received. A referee recommended denial of the writ without reaching Charles' PTD eligibility. The referee concluded that Charles's claim had abated upon his death and that Leola had no legal right, under R.C. 4123.60, to pursue payment of his PTD in mandamus. The court of appeals adopted the referee's report, with one judge dissenting, and denied the writ.

{¶ 8} The cause is before this court upon an appeal as of right.

*Law Offices of Stanley R. Jurus* and *Michael J. Muldoon*, for appellant.

*Buckingham, Doolittle & Burroughs, L.P.A., Brett L. Miller* and *Richard A. Hernandez*, for appellee Firestone Tire & Rubber Co.

*Betty D. Montgomery*, Attorney General, and *Yolanda L. Barnes*, Assistant Attorney General, for appellee Industrial Commission.

––––––––––––––––––

*Per Curiam.*

{¶ 9} We recently resolved the question presented in Leola's second proposition of law—Is mandamus available to compel payments, pursuant to R.C. 4123.60, to a decedent's spouse for PTD the decedent might have received prior to his death? In *State ex rel. Nicholson v. Copperweld Steel Co.* (1996), 77 Ohio St.3d _____, _____ N.E.2d ____, we held that R.C. 4123.60 gives dependents the right to claim compensation for which the decedent was eligible, but was not paid before

4

death, and that mandamus may be used to enforce this right. The court of appeals' judgment to the contrary, therefore, is reversed.

{¶ 10} In her first proposition of law, Leola claims that the commission abused its discretion in finding that Charles was not permanently and totally disabled. For the reasons that follow, we agree and further find that Leola is entitled to payment of the PTD Charles should have received before his death.

{¶ 11} In denying Charles's PTD application, the commission rejected the Frenz and Rosen reports because it was not convinced that the doctors had excluded Charles's diabetes in determining his medical inability to return to work. Leola complains that this finding "impeaches" a previous commission order.

{¶ 12} Leola is referring to the commission order that Firestone challenged in *State ex rel. Firestone Tire & Rubber Co. v. Indus. Comm* (1989), 47 Ohio St.3d 78, 547 N.E.2d 1173, a mandamus appeal. In that case, Firestone sought to discredit the Rosen and Frenz reports by establishing through deposition testimony that the doctors had diagnosed permanent and total disability based, in part, on Charles's diabetes, a nonallowed condition and impermissible consideration. *State ex rel. Fields v. Indus. Comm*. (1993), 66 Ohio St.3d 437, 440, 613 N.E.2d 230, 232; *State ex rel. Waddle v. Indus. Comm*. (1993), 67 Ohio St.3d 452, 455, 619 N.E.2d 1018, 1020. In *Firestone*, the commission determined that the conclusions in these reports resulted solely from allowed conditions and, therefore, that the depositions were unnecessary. *Id.* at 79, 547 N.E.2d at 1174. We found some evidence to support the commission's decision and, accordingly, denied a writ to compel the doctors' depositions. *Id*. at 80, 547 N.E.2d at 1175.

{¶ 13} Neither Firestone nor the commission specifically defends the commission's, in effect, reneging on its interpretation of the Rosen and Frenz reports. Leola similarly offers no authoritative explanation why the commission should be bound by its initial interpretation. We need not resolve this issue, however, because we are persuaded by Leola's next argument—essentially that no

evidence establishes Charles's capacity for sedentary employment and that all evidence cited by the commission supports a finding of his permanent and total disability.

{¶ 14} The commission is the exclusive evaluator of evidentiary weight and credibility. Thus, as Firestone argues, the commission is ordinarily free to reject medical reports for legitimate reasons, including the reporting physician's consideration of nonallowed conditions. *State ex rel. Shields v. Indus. Comm.* (1996), 74 Ohio St.3d 264, 268, 658 N.E.2d 296, 299; see *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 21, 31 OBR 70, 72-73, 508 N.E.2d 936, 938-939. But, in rejecting the Rosen and Frenz reports, the commission effectively relied exclusively on the Aronson report to find Charles capable of sedentary sustained remunerative employment. Dr. Aronson evaluated the emotional and psychological component of Charles's injury and determined Charles had a thirty percent impairment; Dr. Aronson did not also assess the impairment caused by the orthopedic condition. The commission thus had no evidence from which to conclude essentially that Charles's head or neck condition permitted sedentary employment.

{¶ 15} To deny PTD in the face of two allowed conditions, the commission must have some evidence that neither condition renders the claimant unfit for sustained remunerative employment. *State ex rel. Johnson v. Indus. Comm.* (1988), 40 Ohio St.3d 339, 340, 533 N.E.2d 720, 721-722. Accord *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 611 N.E.2d 830. Moreover, Dr. Aronson, even with only Charles's psychological/emotional condition before him, nevertheless concluded, as did Drs. Rosen and Frenz and Menassa, that Charles would never be able to return to work. Thus, virtually all the evidence reviewed by the commission supported the conclusion that Charles was unable to engage in sustained remunerative employment.

{¶ 16} Where the record contains some evidence to support the commission's conclusions, its decision will not be disturbed in mandamus. *State ex rel. Burley, supra.* Conversely, where no evidence supports the commission's order, the order represents an abuse of discretion, and a writ of mandamus must issue to correct the abuse. *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 640 N.E.2d 815.

{¶ 17} Here, as stated above, the commission cited no evidence from which to conclude that Charles's allowed conditions permitted sustained remunerative employment, and all the medical evidence reviewed by the commission established that he would never return to work. Furthermore, Charles's death precludes further medical examination. For these reasons, we find that the commission's order cannot be justified on this record, that the order cannot be redeemed with the submission of additional evidence, and that Charles's permanent and total disability is a substantial likelihood. In such extraordinary situations, we have authority to compel payment of PTD for which the claimant qualified. *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666; *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376; *State ex rel. McComas v. Indus. Comm.* (1996), 77 Ohio St.3d ____, ____ N.E.2d _____.

{¶ 18} Accordingly, we grant the requested writ of mandamus and order payment to Leola, pursuant to R.C. 4123.60, of the PTD Charles should have received prior to his death.

*Judgment reversed*
*and writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

_____